Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL IV

| | | |
|---|---|---|
| ALEXIS RAMOS AYALA PEDRO J. MÉNDEZ ACOSTA<br><br>Apelados<br><br>v.<br><br>JOSÉ L. ALERS PÉREZ<br><br>Apelante | TA2025AP00575 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Aguadilla<br><br>Caso Núm.: AG2025CV01942<br><br>Sobre: *Injunction* (Entredicho Provisional, *Injunction* preliminar y permanente) |

Panel integrado por su presidenta, la Jueza Ortiz Flores, el Juez Bonilla Ortiz y la Jueza Martínez Cordero.

*Martínez Cordero, jueza ponente*

**SENTENCIA**

En San Juan, Puerto Rico, a 18 de diciembre de 2025.

Comparece José L. Alers Pérez (señor Alers Pérez o apelante) mediante un recurso de apelación para solicitarnos la revisión de la *Sentencia* emitida y notificada el 20 de noviembre de 2025, por el Tribunal de Primera Instancia, Sala Superior de Aguadilla.[1] Mediante la *Sentencia apelada,* el foro apelado declaró *Con Lugar* la Demanda de epígrafe. En consecuencia, el foro primario ordenó la paralización permanente y la demolición y/o remoción de toda obra de construcción efectuada en la propiedad del apelante.

Por los fundamentos que expondremos, se *confirma* la *Sentencia* apelada.

I

El 22 de octubre de 2025, Alexis Ramos Ayala y Pedro J. Méndez Acosta (en adelante, parte apelada) presentó una *Solicitud*

---

[1] Sistema Unificado de Manejo y Administración de Casos del Tribunal de Primera Instancia (SUMAC TPI), a la Entrada Núm. 29.

*de Injunction* contra el señor Alers Pérez.[2] Adujo que el señor Alers Pérez instaló una máquina mezcladora de hormigón, así como que se encontraba construyendo una verja y una oficina, y fijando muros prefabricados en el terreno colindante que compartía con la parte apelada. Alegó que todo ello lo realizó sin tener ningún tipo de permiso de construcción aprobado. Enfatizó que las actuaciones del señor Alers Pérez le creaban un riesgo de daño o impacto negativo a su salud, seguridad, así como a su propiedad. Añadió que el señor Alers Pérez había radicado una solicitud de Consulta de Ubicación en la Oficina de Gerencia y Permisos (OGPe) para ubicar el uso industrial pesado de una Hormigonera y Oficina Comercial, y que dicha solicitud se encontraba archivada debido a deficiencias encontradas en el trámite. A tenor, solicitó que se declarara ha lugar la solicitud de interdicto; (i) se ordenara la inmediata paralización de las obras que se realizaban en la propiedad sin el permiso de construcción y en incumplimiento del permiso otorgado; y (iii) se ordenara la demolición de las obras construidas sin permiso; y (iv) se citara el caso a una vista.

Mediante *Orden y Citación* emitida y notificada el 28 de octubre de 2025, el tribunal de instancia señaló una vista argumentativa para el 12 de noviembre de 2025.[3] A tenor, ordenó a la Secretaria del Tribunal a expedir el correspondiente mandamiento para que se citara a al señor Alers Pérez. En cumplimiento con lo ordenado, el 30 de octubre de 2025, la Secretaria del Tribunal expidió el *Mandamiento de orden y citación*, para que se le diligenciara personalmente al señor Alers Pérez conjuntamente con copia de la demanda incoada.[4]

---

[2] SUMAC TPI, a la Entrada Núm. 1. Conviene mencionar que este caso fue atendido inicialmente por el Hon. Miguel Trabal Cuevas, quien se inhibió *motu proprio* por conocer a la parte apelante y demandado, en la fecha del 27 de octubre de 2025. Véase SUMAC TPI, a la Entrada Núm. 3.

[3] SUMAC TPI, a la Entrada Núm. 5.

[4] *Íd.,* a la Entrada Núm. 6.

El 3 de noviembre de 2025, compareció la parte apelada mediante *Moción en cumplimiento de orden* para acreditar haber diligenciado la orden y citación para la vista señalada.[5] Adjuntó a su escrito el certificado de diligenciamiento.[6]

Por otro lado, el 4 de noviembre de 2025, compareció Super Mix Concrete Inc. mediante su representante y presidente, el señor Luis Granell Caraballo para presentar una *Solicitud de intervención.*[7] En la misma, adujo poseer intereses propietarios y económicos que podrían verse afectados por las construcciones llevadas a cabo por el señor Alers Pérez. Por lo cual, solicitó que se autorizara su intervención en el pleito.

Retomando lo previamente expuesto, mediante *Orden,*[8] emitida el 4 de noviembre de 2025, y notificada el 5 de noviembre de 2025, el foro primario dio por cumplido el escrito en cumplimiento de orden, para acreditar el diligenciamiento de la citación presentada por la parte apelada. En cuanto a la solicitud de intervención, el 6 de noviembre de 2025, la parte apelada presentó un escrito mediante el cual esbozó no tener reparo alguno a lo solicitado por Super Mix Concrete Inc.[9]

Así las cosas, el 6 de noviembre de 2025, el señor Alers Pérez incoó una *Moción de desestimación.*[10] Adujo que, el señor Alers Pérez alegó de manera vaga que estuvo adversamente afectado con sus alegadas actuaciones. Añadió que dicha alegación se encontraba "huérfana" de hechos específicos. A tenor, solicitó la desestimación de la demanda al amparo de la Regla 10.2 de Procedimiento Civil,[11] tras razonar que se dejó de exponer una causa de acción justiciable. De otro lado y en la misma fecha, el señor Alers Pérez

---

[5] SUMAC TPI, a la Entrada Núm. 7.
[6] *Íd.,* al Anejo 1.
[7] SUMAC TPI, a la Entrada Núm. 8.
[8] *Íd.,* a la Entrada Núm. 9.
[9] *Íd.,* a la Entrada Núm. 11.
[10] *Íd.,* a la Entrada Núm. 12.
[11] 32 L.P.R.A. Ap. V, R. 10.2.

presentó una *Moción aclaratoria*.[12] En la misma, solicitó al foro primario que aclarase el hecho sobre si la vista a celebrarse el 12 de noviembre de 2025 era una argumentativa y no evidenciaria.

Retomando lo relacionado a la solicitud de intervención, mediante *Orden*[13] emitida el 6 de noviembre de 2025, y notificada el 7 de noviembre de 2025, el foro *a quo* autorizó la intervención solicitada. En cuanto a la *Moción aclaratoria*, mediante *Orden*[14] emitida y notificada el 7 de noviembre de 2025, el foro primario esbozó que la orden era clara y la vista era una argumentativa.

En reacción a la solicitud de desestimación, el 8 de noviembre de 2025, la parte apelada presentó una *Moción en cumplimiento de orden y oposición a desestimación*.[15] Arguyó que el remedio solicitado consistió en un *injunction* estatutario al amparo de la Ley para la Reforma del Proceso de Permisos de Puerto Rico (Ley Núm. 161),[16] el cual era uno independiente al del *injunction* tradicional. A la luz de lo anterior, añadió que este remedio provenía de un mandato legislativo expreso, por consiguiente, no le aplicaba el mismo rigor como si fuese un *injunction* tradicional. Alegó que dicho remedio procedía cuando se demostraba que la obra o el uso no contaba con los permisos correspondientes. Dado a lo anterior, solicitó al foro primario que declarase *Sin Lugar* la desestimación solicitada por la parte apelante.

Subsiguientemente, el 10 de noviembre de 2025, mediante *Resolución*[17] el foro primario declaró *No Ha Lugar* la referida moción de desestimación. Adelantó que las alegaciones según esbozadas en la demanda, de ser ciertas, eran suficientes en derecho para que la

---

[12] SUMAC TPI, a la Entrada Núm. 13.
[13] *Íd.,* a la Entrada Núm. 14.
[14] *Íd.,* a la Entrada Núm. 15.
[15] *Íd.,* a la Entrada Núm. 17.
[16] Ley Núm. 161-2009, 23 LPRA sec. 9011 *et seq.*
[17] SUMAC TPI, a la Entrada Núm. 19.

parte apelada tuviese legitimación en el presente procedimiento. Por lo cual, ordenó la continuación de los procedimientos.

Igualmente, en fecha del 10 de noviembre de 2025, el foro primario emitió una *Resolución*[18] en la cual declaró *No Ha Lugar* la solicitud de intervención, luego de reconsiderar su determinación y entender que la intervención no procedía tal cual solicitada.

En la misma fecha, el señor Alers Pérez presentó una *Moción informativa*,[19] a la cual le adjuntó varios documentos con la finalidad de acreditar las gestiones realizadas para la reactivación de su solicitud de permiso de construcción, las correspondientes notificaciones a los colindantes y las fotos del rótulo colocado en los predios.

Posteriormente, el 11 de noviembre de 2025, el señor Alers Pérez presentó una *Moción de reconsideración*.[20] En la misma, alegó que la parte apelada no era colindante a la propiedad en la que se realizaba la construcción en disputa, por tal razón, concluyó que carecía de legitimación activa para la presente reclamación. Por lo cual, solicitó reconsideración de la resolución emitida declarando *No Ha Lugar* la desestimación solicitada. Además, solicitó la desestimación de la demanda por falta de legitimación. A lo cual, el foro primario mediante *Orden*[21] emitida el 12 de noviembre de 2025, declaró *No Ha Lugar*.

De ahí, el 12 de noviembre de 2025, se celebró la vista argumentativa.[22] Conforme se desprende de los autos ante el TPI, a la misma comparecieron las partes de manera presencial.[23] En síntesis, la parte apelada alegó que la prueba documental presentada por el señor Alers Pérez confirma que no había permisos

---

[18] SUMAC TPI, a la Entrada Núm. 20.
[19] *Íd.,* a la Entrada Núm. 21, Anejos 1-10.
[20] *Íd.,* a la Entrada Núm. 23.
[21] *Íd.,* a la Entrada Núm. 25.
[22] *Íd.,* a la Entrada Núm. 33.
[23] *Íd.,* a la Entrada Núm. 33.

para la construcción. Alegó que los documentos se limitaron a establecer que se presentó una consulta de ubicación, la cual era trámite discrecional que debía ser evaluado por la OGPe. Por su parte, el señor Alers Pérez alegó que la parte apelada no había sometido prueba de sus alegaciones y que el *injunction* no operaba de manera automática con la alegación de que no hubiese permisos.

Celebrada la vista, el foro primario emitió la *Sentencia*, notificada el 20 de noviembre de 2025, en la que declaró *Con Lugar* la demanda.[24] En consecuencia, se ordenó la paralización permanente y la demolición y/o remoción de toda obra de construcción efectuada en la propiedad del apelante, por entender que no tenía los permisos correspondientes para realizar la misma.

En el dictamen apelado, el foro de instancia concluyó que, durante la vista celebrada, el señor Alers Pérez no acreditó poseer permiso de cualquier tipo para la construcción que estaba realizando. En consecuencia, ordenó a la parte apelante la paralización permanente, la demolición y/o remoción de toda obra de construcción efectuada en la propiedad sin los permisos otorgados por la OGPe y/o el Municipio.

En desacuerdo con el curso decisorio de la primera instancia judicial, el 21 de noviembre de 2025, compareció el apelante mediante un *Recurso de Apelación*[25] en el cual esbozó los siguientes cuatro (4) señalamientos de error:

> PRIMER ERROR: ERR[Ó] EL TPI AL DICTAR UN INJUNCTION SIN RECIBIR PRUEBA ALGUNA, NI FORMULAR DETERMINACIONES DE HECHOS.
>
> SEGUNDO ERROR: ERR[Ó] EL TPI AL DICTAR UN INJUNCTION SIN CELEBRAR UNA VISTA EVIDENCIARIA Y NEGARLE A LA APELANTE LA OPORTUNIDAD DE CONFRONTAR O IMPUGNAR LA PRUEBA DEL PROMOVENTE.

---

[24] SUMAC TPI, a la Entrada Núm. 29.
[25] Sistema Unificado de Manejo y Administración de Casos del Tribunal de Apelaciones (SUMAC TA), a la Entrada Núm. 1.

TERCER ERROR: ERR[Ó] EL TPI AL DICTAR UN INJUNCTION SIN EXIGIR LA PRESTACI[Ó]N DE UNA FIANZA.

CUARTO ERROR: ERR[Ó] EL TPI AL DICTAR UN INJUNCTION SIN HABER SIDO EMPLAZADA LA PARTE APELANTE EN CUANTO AL INJUNCTION PERMANENTE QUE ES UN RECURSO ORDINARIO Y REQUIERE PARA SU ADJUDICACI[ÓN] QUE LA PARTE APELANTE SEA EMPLAZADA.

Mediante *Resolución*[26] emitida el 1 de diciembre de 2025, y notificada el 3 de diciembre de 2025, concedimos a la parte apelada hasta el 22 de diciembre de 2025, para expresarse en torno al recurso. Luego, el 5 de diciembre de 2025, emitimos una *Resolución* mediante la cual se ordenó al foro apelado a remitirnos la grabación de la vista celebrada el 12 de noviembre de 2025. El 18 de diciembre de 2025, compareció la parte apelada mediante el *Alegato de las partes apeladas*. Con el beneficio de la comparecencia de las partes, procederemos a disponer del recurso instado.

II

## A. El Injunction Estatutario

El recurso de *injunction* es un remedio extraordinario discrecional que procura la expedición por escrito de un mandamiento judicial que le exige a una persona a actuar o le prohíbe realizar determinada conducta que infringe o perjudica los derechos de otra.[27] Dicho de otra manera, se trata de un remedio que busca prohibir u ordenar la ejecución de determinado acto, con el fin de evitar que se causen perjuicios inminentes o daños irreparables a alguna persona.[28] A su vez, el *injunction* es un remedio dirigido principalmente contra actos futuros que amenazan ser cometidos o que se anticipa que serán cometidos.[29]

---

[26] SUMAC TA, a la Entrada Núm. 2.
[27] Artículo 675 del Código de Enjuiciamiento Civil de Puerto Rico de 1933 (Código de Enjuiciamiento Civil), 32 LPRA sec. 3421; *E.L.A. v. Asoc. de Auditores*, 147 DPR 669, 679 (1999).
[28] *VDE Corporation v. F & R Contractors*, 180 DPR 21, 40 (2010); *E.L.A. v. Asoc. de Auditores*, supra, a la pág. 679.
[29] *VDE Corporation v. F & R Contractors*, supra, a la pág. 40; R. Hernández Colón, *Práctica jurídica de Puerto Rico: Derecho Procesal Civil*, 4ta ed., San Juan, Ed. Lexis Nexis, 2007, a la pág. 463.

Puesto a que el referido remedio es uno de carácter extraordinario, los tribunales deben otorgarlo únicamente en aquellos casos en los que no existe otro remedio adecuado o cuando el remedio existente en el curso básico de la ley es inadecuado.[30] Cabe destacar, además, que nuestro Tribunal Supremo ha establecido que, para determinar si en un caso procede el recurso extraordinario de *injunction*, debe existir un agravio de patente intensidad al derecho de la persona que reclame urgente reparación.[31] Igualmente, la parte promovente deberá demostrar que, de no concederse el *injunction*, sufriría un daño irreparable.[32] Es decir, un daño que no puede ser apreciado con certeza ni puede ser debidamente compensado por cualquier indemnización que se consiguiera recobraren un pleito en ley.[33]

Huelga resaltar que, bajo ciertas circunstancias y con el fin de prevenir violaciones a sus disposiciones y a la política pública que implantan, algunas leyes especiales autorizan la expedición de un *injunction*. Esto trata de un recurso especial, conocido como *injunction* estatutario, el cual es distinto al *injunction* clásico u ordinario.[34]

Particularmente, la Ley para la Reforma del Proceso de Permisos de Puerto Rico (Ley Núm. 161) faculta a: la Junta Planificación; los Municipios Autónomos con Jerarquía de la I a la III; las Entidades Gubernamentales Concernidas que hayan determinado que sus leyes y reglamentos han sido violados, y cualquier persona privada, natural o jurídica que tenga un interés propietario o personal que podría verse adversamente afectada para

---

[30] *E.L.A. v. Asoc. de Auditores*, supra, a la pág. 679; *Mun. de Loíza v. Sucns. Suárez et al.*, 154 DPR 333, 367 (2001).

[31] *VDE Corporation v. F & R Contractors*, supra, a la pág. 40*; Com. Pro. Perm. Bda. Morales v. Alcalde*, 158 DPR 195, 205 (2002).

[32] *VDE Corporation v. F & R Contractors*, supra, a la pág. 40*; Misión Ind. P.R. v. J.C.A.*, 142 DPR 656, 681 (1997).

[33] *Misión Ind. P.R. v. J.C.A.*, supra, a la pág. 681.

[34] J. Cuevas Segarra, *Tratado de Derecho Procesal Civil*, 2da ed., Estados Unidos, Pubs. JTS, 2011, T. V., a la pág. 1672.

presentar una acción de *injunction* o cualquier acción adecuada a

los fines de solicitar:

> 1) la revocación de una determinación final otorgada, cuya solicitud se haya hecho utilizando información incorrecta o falsa;
>
> 2) la paralización de una obra iniciada sin contar con las autorizaciones y permisos correspondientes, o incumpliendo con las disposiciones y condiciones del permiso otorgado;
>
> 3) la paralización de un uso no autorizado o de una construcción autorizada mediante permiso, para la cual no se hayan realizado los pagos correspondientes a aranceles, pólizas, arbitrios y sellos;
>
> 4) la demolición de obras construidas, que al momento de la presentación del recurso y al momento de adjudicar el mismo no cuenten con permiso de construcción, ya sea porque nunca se obtuvo o porque el mismo ha sido revocado.[35]

Precisa destacar que el referida acción de *injunction* se podrá

presentar en el Tribunal de Primera Instancia indistintamente de

haberse presentado una querella administrativa.[36] Ahora bien, una

vez se haya presentado este recurso extraordinario, "la agencia

administrativa perderá jurisdicción automáticamente sobre la

querella y cualquier actuación que llevare a cabo con respecto a la

misma será considerada *ultra vires*".[37] Asimismo, una vez incoado el

presente recurso, el foro primario "deberá celebrar vista dentro de

un término no mayor de diez (10) días naturales desde la

presentación del recurso y deberá dictar sentencia en un término no

mayor de veinte (20) días naturales desde la celebración de la

vista".[38]

Establecido lo anterior, es menester señalar que los requisitos

necesarios para la concesión de un *injunction* estatuario son menos

rigurosos que los exigidos para el ordinario.[39] De manera que, "la

petición del recurso interdictal del aludido esquema legal no debe

examinarse rigurosamente al amparo de los requisitos establecidos

---

[35] Artículo 14.1 de la Ley para la Reforma del Proceso de Permisos de Puerto Rico, Ley 161-2009, 23 LPRA sec. 9024.
[36] *Íd.*
[37] *Íd.*
[38] *Íd.*
[39] *Next Step Medical v. Bromedicom et al.,* supra, a la pág. 497; *CBS Outdoor v. Billboard One, Inc. et al.,* 179 DPR 391, 409 (2010).

para la concesión del *injunction* preliminar clásico".[40] Esto es así, puesto que, al presentarse una solicitud de *injunction* estatutario, no se requiere alegación, ni prueba de daño irreparable.[41] Entiéndase que, basta con que el demandado haya violado las disposiciones de la ley.[42] A tenor, la parte promovente de un *injunction* estatutario, debe acreditar ante el foro competente que: (i) existe una ley o reglamento que regula el uso o actividad en cuestión, y (ii) los demandados están haciendo uso o realizando una actividad en violación a la ley o reglamento.[43]

Sobre el anterior particular, nuestro Tribunal Supremo expresó particularmente, en cuanto al *injunction* estatutario al amparo del Artículo 14.1 de la Ley Núm. 161, que este "no se rige por los requisitos y criterios rigurosos que aplican al *injunction* tradicional en virtud de la Regla 57 de Procedimiento Civil ni tampoco se le pueden oponer las defensas tradicionales de la equidad".[44] Añadió que "cuando se solicita un *injunction* fundamentado en un estatuto, lo determinante preliminarmente es si la situación está o no cobijada por dicho estatuto".[45] Así, pues, el Alto Foro concluyó que este remedio por ser un estatuario y no surgir de la equidad procederá cuando se demuestre que: (i) la obra no cuenta con las autorizaciones o los permisos correspondientes, o (ii) que se realizó en contravención a los permisos concedidos.[46]

Finalmente, es necesario apuntalar que la concesión de un *injunction* descansa en la sana discreción del Tribunal.[47] Por ende, la decisión que tome el foro primario no debe ser revocada por este

---

[40] *Next Step Medical v. Bromedicom et al.,* supra, a la pág. 480.
[41] *A.R.Pe. v. Rivera*, 159 DPR 429, 444 (2003).
[42] *Íd.*
[43] J. Cuevas Segarra, *op. cit.*, a las págs. 1672-1673.
[44] *Díaz Vázquez v. Colón Peña*, 214 DPR 1135, 1148 (2024). (Cita depurada).
[45] *Íd.* (Cita depurada).
[46] *Íd.*
[47] *E.L.A. v. Asoc. de Auditores*, supra, a la pág. 680.

Tribunal Apelativo a menos que se demuestre que el tribunal *a quo* abusó de su facultad discrecional.[48]

### III

Según surge de los autos ante nuestra consideración, el presente caso tuvo su inicio cuando la parte apelada interpuso una solicitud de injunction al amparo del Artículo 14.1 de la Ley Núm. 161.[49] En esencia, la parte apelada peticionó la concesión de un interdicto estatutario contra el señor Alers Pérez por realizar construcciones sin los permisos, en un terreno colindante. Esbozó que dichas obras representaban riesgo para su salud, seguridad y propiedad. Recibida la solicitud, el foro *a quo* procedió a señalar una vista argumentativa y ordenó la notificación de la citación junto al pliego interpuesto por la parte apelada, personalmente, lo cual fue acreditado.

Luego de varios incidentes procesales los cuales incluyeron un escrito del apelante para que se le aclarara el tipo de vista a celebrarse *–evidenciaria o argumentativa-* el tribunal de instancia respondió y, posteriormente, celebró la vista de interdicto estatutario. A la vista comparecieron las partes y en ella las representaciones legales de las partes tuvieron amplia oportunidad para argumentar y contestar las preguntas del Tribunal.

Producto de la vista celebrada, el foro apelado emitió la *Sentencia* objeto de revisión, mediante la cual concedió el remedio solicitado por la parte apelada, por lo que ordenó la paralización permanente y la demolición y/o remoción de toda obra de construcción efectuada en la propiedad del apelante, por entender que no tenía los permisos correspondientes para realizar la misma.

---

[48] *E.L.A. v. Asoc. de Auditores*, supra, a la pág. 680; *Delgado v. Cruz*, 27 DPR 877, 880 (1919).
[49] 23 LPRA sec. 9024.

En desacuerdo con esta determinación, el señor Alers Pérez compareció ante nos.

Mediante los cuatro (4) señalamientos de error esgrimidos en su recurso de apelación, el señor Alers Pérez nos plantea que el foro primario se equivocó al emitir una *injunction* sin: (i) formular determinaciones de hechos; (ii) celebrar una vista evidenciaria; (iii) exigir la prestación de una fianza, y (iv) haber sido emplazado en cuanto al *injunction* permanente, siendo este un recurso ordinario.

Luego de evaluar la totalidad de los autos ante nuestra consideración, lo que incluye las posiciones de las partes y haber escuchado la grabación de la vista, hemos entendido que, por estar íntimamente relacionados, atenderemos el *primer*, *segundo* y *tercer* error en conjunto, mientras que el *cuarto* señalamiento de error lo discutiremos por separado.  Dicho lo anterior, procedemos a discutir la procedencia de los antedichos señalamientos.

En su *primer, segundo* y *tercer* error el apelante plantea que el foro primario falló al dictar un *injunction* sin antes recibir prueba, celebrar una vista evidenciaria y permitirle impugnar la prueba del promovente. Por otro lado, arguye que el referido foro debió haber formulado determinaciones de hecho y exigido a la parte promovente la prestación de una fianza.

En cuanto al asunto de las determinaciones de hechos, lo cierto es que la Regla 42.2 de Procedimiento Civil dispone que "al conceder o denegar *injunction* interlocutorios, el tribunal, de igual modo, consignará las determinaciones de hechos y conclusiones de derecho que constituyan los fundamentos de su resolución".[50] Por otro lado, respecto a la prestación de la fianza, la Regla 57.4 de Procedimiento Civil exige la prestación de fianza antes de que se

---

[50] Regla 42.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 42. 2.

TA2025AP00575                                              13

dicte una orden de entredicho preliminar. La referida regla lee como sigue:

> "No se dictará ninguna orden de entredicho ni de injunction preliminar excepto mediante la prestación de fianza por la parte solicitante, por la cantidad que el tribunal considere justa, para el pago de las costas y daños en que pueda incurrir o que haya sufrido cualquier parte que haya resultado indebidamente puesta en entredicho o restringida."[51]

Ahora bien, debemos aclarar que ambas reglas están específicamente dirigidas a los entredichos preliminares, los cuales son distintos al *injunction* estatutario, que fue el tipo de interdicto peticionado en la acción del título. Según esbozamos en nuestra previa exposición doctrinal, cuando se solicita un remedio al amparo de un *injunction* de carácter estatutario, la petición "no debe examinarse rigurosamente al amparo de los requisitos establecidos para la concesión del *injunction* preliminar clásico".[52] Establecido lo anterior, conviene mencionar que el Artículo 14.1 únicamente exige que, al presentarse el recurso, el foro primario celebre una vista dentro de un término no mayor de diez (10) días naturales desde la presentación del recurso y que dicte sentencia en un término no mayor de veinte (20) días naturales desde la celebración de la vista.[53] Nada dice el referido artículo en cuanto a la consignación de determinaciones de hechos y conclusiones de derecho, como tampoco en cuanto a prestación de una fianza.

Particularmente, nuestro Alto Foro, al expresarse sobre el *injunction* estatuido en el referido articulado ha concluido que este "no se rige por los requisitos y criterios rigurosos que aplican al *injunction* tradicional en virtud de la Regla 57 de Procedimiento Civil ni tampoco se le pueden oponer las defensas tradicionales de la equidad".[54] De otra parte, puntualizamos que respecto a este tipo

---

[51] Regla 57.4 de Procedimiento Civil, 32 LPRA Ap. V, R. 57.4.
[52] *Next Step Medical v. Bromedicom et al.,* supra, a la pág. 480.
[53] Artículo 14. 1 de la Ley Núm. 161, *supra.*
[54] *Díaz Vázquez v. Colón Peña*, supra, a la pág. 1148. (Cita depurada).

de interdicto se ha subrayado que "cuando se solicita un *injunction* fundamentado en un estatuto, lo determinante preliminarmente es si la situación está o no cobijada por dicho estatuto".[55] Por lo antes expuesto, entendemos que el foro primario no incidió al no fundamentar su decisión mediante determinaciones de hecho y al no exigirle al aquí apelado la prestación de una fianza. Específicamente, en cuanto a la fianza, es nuestro juicio que esta es incompatible con la falta de rigurosidad que caracteriza al *injunction* estatutario.

De otra parte, respecto al argumento de que se debió celebrar una vista evidenciaria, así como que no se recibió prueba, según vimos, el Artículo 14.1, únicamente exige que se celebre una vista "dentro de un término no mayor de diez (10) días naturales desde la presentación del recurso". No especifica que tipo de vista debe celebrarse. Por lo que entendemos que el tribunal *a quo* cumplió con este requerimiento al celebrar la vista argumentativa antes reseñada.

Ahora bien, en cuanto a la prueba que se requiere para conceder el *injunction* del señalado Artículo 14.1, nuestro Tribunal Supremo estableció que este procederá cuando: se demuestre que: (i) la obra no cuenta con las autorizaciones o los permisos correspondientes, o (ii) que se realizó en contravención a los permisos concedidos.[56] Al examinar detenidamente el expediente ante nuestra consideración, así como la grabación de la vista quedó demostrado que el apelante no contaba con los permisos correspondientes, de modo que, en este caso, se daban las circunstancias para conceder el *injunction* estatutario solicitado. Veamos.

---

[55] *Díaz Vázquez v. Colón Peña*, supra, a la pág. 1148. (Cita depurada).
[56] *Íd.*

Surge de los autos ante nuestra consideración que, el 10 de noviembre de 2025, el aquí apelante presentó una *Moción informativa* en la cual expresó que:

> La compareciente ha reactivado su solicitud de permiso mediante Consulta de Ubicación y se ha notificado de la actuación a los colindantes reglamentarios. Además[,] se ha colocado el correspondiente r[ó]tulo en el predio.[57]

Además de expresar lo anterior, el apelante acompañó el escrito con una serie de documentos con la intención de comprobar lo indicado. De manera que, desde entonces, era claro para el tribunal que la obra en cuestión no contaba con los permisos correspondientes. Por consiguiente, el referido foro tenía plena facultad para otorgar el *injunction* solicitado al amparo del Artículo 14.1 de la Ley Núm. 161.[58] No obstante, lo anterior, el foro primario optó con cumplir con los requerimientos del estatuto y celebrar una vista, según se exige. En esta vista, el juzgador de instancia cuestionó en varias ocasiones al representante legal del apelante en cuanto a lo que surgía de la *Moción informativa* del 10 de diciembre de 2025. En respuesta a la interrogante del juzgador de instancia, este expresó que, en efecto, su representado ***no tenía un permiso para la obra***.

En mérito de lo antes expuesto, entendemos que, de ninguna manera, el tribunal *a quo* se excedió en su discreción al conceder el *injunction* estatutario sobre el cual se solicita revisión. De modo que, no se cometieron los primeros tres (3) errores esgrimidos por el apelante. Pese a que lo anterior es suficiente para que confirmemos el dictamen apelado, entendemos que es necesario discutir la procedencia del *cuarto* y último error esgrimido por el apelante.

En su *cuarto* señalamiento de error, el apelante arguye que el tribunal de instancia falló al dictar un *injunction,* sin antes haberlo emplazado. Sobre este particular precisa acentuar que, en ciertas

---

[57] SUMAC TPI, a la Entrada Núm. 21.
[58] 23 LPRA sec. 9024.

circunstancias, las garantías del debido proceso pueden quedar debidamente protegidas pese a que no exista un emplazamiento formal al demandado.[59] Lo anterior, se da cuando una persona se somete de manera voluntaria a un pleito, sea de forma expresa o tácita.[60] Esto, se conoce como la figura de la sumisión, la cual "consiste en que una parte comparece voluntariamente y realiza algún acto sustancial que la constituya parte en el pleito, sometiéndose así a la jurisdicción del Tribunal".[61] Vemos de la relación de hechos antes reseñada que el aquí apelante nunca levantó la defensa de falta de jurisdicción sobre la persona, si no que compareció, se defendió y presentó escritos solicitando remedios a su favor, consolidándose así sumisión a la jurisdicción del tribunal. Por lo cual, este no puede alegar ahora que no se le emplazó correctamente. Más aún, cuando surge de los autos acreditación de que este se le diligenció la citación para que compareciera a la vista argumentativa y que se le entreg[ó] copia de la *Demanda.*[62] Es por lo anterior que entendemos que el *cuarto* error esgrimido no fue cometido.

Por último, es menester apuntalar que la concesión de un *injunction* descansa en la sana discreción del foro primario.[63] Es por tal razón, que la decisión que tome el aludido foro no debe ser revocada por esta Curia a menos que se demuestre que abusó de su discreción.[64] En vista de que entendemos que el foro primario no incidió al emitir la determinación apelada, nos es forzoso confirmar la *Sentencia* apelada.

---

[59] *Franco v. Corte*, 71 DPR 686, 691 (1950).
[60] *Sánchez Rivera v. Malave Rivera*, 192 DPR 854, 873 (2015)
[61] *Íd.*; *Qume Caribe, Inc. v. Srio de Hacienda*, 153 DPR 700, 711 (2001).
[62] SUMAC TPI, a la Entrada Núm. 7, Anejo 1.
[63] *E.L.A. v. Asoc. de Auditores*, supra, a la pág. 680.
[64] *Íd.*; *Delgado v. Cruz*, supra, a la pág. 880.

## IV

Por los fundamentos que anteceden, se *confirma* la *Sentencia* apelada.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones